Argued and submitted December 14, 2004, reversed and remanded in part;
otherwise affirmed September 8, 2005

## NORTHWEST COUNTRY PLACE, INC.,
an Oregon corporation,
*Respondent,*

*v.*

## NCS HEALTHCARE OF OREGON, INC.,
an Ohio corporation,
registered to do business in Oregon,
*Appellant.*

0204-03349; A122110

119 P3d 272

Timothy R. Volpert argued the cause for appellant. With him on the briefs were Kent B. Thurber, Jeff Lindberg, and Davis Wright Tremaine LLP.

Gary Harrell argued the cause for respondent. On the brief were Mary A. Nester and Harrell & Nester, LLP.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Defendant appeals from a judgment that (1) rejected its counterclaim for breach of contract and (2) determined that defendant was not entitled to attorney fees notwithstanding that defendant had prevailed against plaintiff's breach of contract claim. Defendant raises two primary contentions. First, defendant contends that the trial court's expressed reasoning is internally inconsistent and, in all events, is irreconcilable with its disposition of defendant's counterclaim. Second, defendant contends that it was entitled to attorney fees either because the trial court entered judgment for defendant on plaintiff's contract claim or because, under a proper analysis, defendant should have prevailed on its counterclaim. As explained below, although we affirm the disposition of the counterclaim, we conclude that the trial court erred in failing to designate defendant as the prevailing party on plaintiff's contract claim and, concomitantly, in failing properly to consider defendant's entitlement to attorney fees as a "prevailing party." *See* ORS 20.077 (2001), *amended by* Or Laws 2003, ch 576, § 167. Accordingly, we remand for reconsideration of defendant's attorney fee petition.

Plaintiff owns and operates a number of long-term care facilities. Defendant is a pharmaceutical company. In 1995, defendant entered into a contract with plaintiff by which defendant agreed to supply pharmaceutical goods and services to one of plaintiff's facilities, Oakwood Country Place. In 1999 and 2000, the parties modified the pricing schemes under that contract. In the fall of 2001, plaintiff became aware of apparent disparities between what defendant was charging Oakwood and what defendant was charging one of plaintiff's other facilities, Liberty Country Place, under a similar contract. As a result of the consequent audit, plaintiff became convinced that defendant was inflating the price of drugs supplied to plaintiff, with the result that plaintiff was being overcharged by defendant. For a period of eight months—August 2001 through March 2002—plaintiff refused to pay defendant's invoices. Nevertheless, defendant continued to supply goods and services to plaintiff's facilities throughout that period. In April 2002, defendant began

requiring plaintiff to "prepay" for delivery of drugs and services.

When the parties could not reach a resolution of their billing dispute, plaintiff sued defendant for breach of contract, alleging that defendant "had been overcharging plaintiff at least starting from June 1, 2000, if not before, and continuing through the present time * * * in the approximate amount of $200,000, the exact amount to be determined at trial." Defendant answered and counterclaimed for payment of the outstanding, unpaid invoices.[1]

At trial, plaintiff, in attempting to establish the amount of defendant's alleged overcharging, relied on the testimony of an expert witness pharmaceutical services consultant, Robert Wehner. Wehner analyzed defendant's billings from 1998 through 2002, utilizing sampling and statistical extrapolation. Wehner testified that, according to his calculations, the total amount of defendant's overcharges from 1999 through 2001 was $274,399.[2]

In defending against plaintiff's allegations of overcharging, defendant offered expert testimony and argument challenging the statistical validity of Wehner's calculations. In its supplemental trial memorandum, defendant argued that "Wehner's calculations were based upon flawed methodology." Among the alleged methodological flaws that defendant identified were that the dates of service and patients

---

[1] In its counterclaim, defendant alleged an "aggregate amount" of unpaid invoices for the period from August 2001 through March 2002 of $196,136.32 plus interest. Defendant's trial memorandum claimed that "[t]he unpaid balance on this contract has grown to approximately $275,000." Defendant's "Proposed Findings of Fact and Conclusions of Law" included a proposed finding that "plaintiff owes [defendant] $281,461.94 for pharmaceutical goods and supplies * * * with interest." The trial court later stated, in its first letter opinion, that defendant's claim was for $281,448.86. On appeal, defendant's brief states that "the aggregate amount of defendant's unpaid invoices for August, 2001 through March, 2002, including accrued interest, was $281,228.86." The parties offered no explanation for the discrepancies between those various figures, and we are unable to determine any.

[2] That figure was based on Wehner's determination that (1) defendant had overcharged plaintiff's Liberty facility by 19 percent in 1999, by 33 percent in 2000, and by 38 percent in 2001; and (2) defendant had overcharged plaintiff's Oakwood facility by 38 percent in 1999 and 2000 and by 5 percent in 2001. For both facilities, Wehner concluded that "in 2002 * * * the charges came in line" with what would be expected under the parties' contracts.

within each month whose charges were analyzed were not randomly selected; that plaintiff "select[ed] the residents to be audited, even though plaintiff has an obvious motivation to select patients whose bills could skew the calculation in its favor"; that Wehner utilized too small a sample size in that too few patients were selected; that patients were included in the sample who were not covered by the contracts at issue; and that Wehner "did not take account of returns to inventory and other adjustments to initial billings." In addition, defendant argued that Wehner was biased because defendant had laid Wehner off less than two years before he conducted the audit of plaintiff's account with defendant, and he "was upset at losing his job" with defendant. Finally, defendant argued that Wehner based his analysis on a "false assumption" that the contractually specified rate was equal to the rates paid under the state Medicaid system.

With respect to its counterclaim, defendant presented evidence, in the form of summaries of the invoices that it had issued to plaintiff between August 31, 2001 and March 31, 2002, indicating that, as of the time of trial, the unpaid invoices plus interest at the contractual 1.5 percent per month totaled $281,228.86. Plaintiff defended against the counterclaim by arguing that the invoice summaries on which defendant relied did not accurately describe the amounts owing under the contract for the counterclaim period of August 31, 2001 through March 31, 2002. In that regard, plaintiff advanced three principal contentions.

First, plaintiff argued that defendant's invoices included improper overcharges. That is, in contesting the counterclaim, plaintiff relied, in part, on the same evidence that it had presented on its own claim—*viz.*, Wehner's audit and statistical analysis. As noted, Wehner testified that defendant's charges were inconsistent with the pricing structure set forth in the parties' contract, resulting in significant overcharges. Plaintiff did not, however, present any evidence as to the specific amount of any alleged overcharging in defendant's invoices for the period covered by the counterclaim (August 31, 2001 through March 31, 2002).

Second, plaintiff challenged the accuracy of defendant's proof of damages due to a number of billing and

accounting errors created by defendant's computerized billing and invoicing procedures. Plaintiff's accountant, Alana Ayriss, testified:

"There are quite a few errors on the invoices that we found. We did a thorough research of every invoice, every open invoice. * * * We looked at every invoice from that period of time, and we found quite a few discrepancies."

Plaintiff also elicited testimony from defendant's executive director for Oregon, Susan Morris, in which Morris admitted that defendant's exhibits summarizing the outstanding invoices—upon which defendant principally relied for proof of the $281,228.86 figure—included some invoices that were not encompassed within the counterclaim. Further, there were discrepancies between the summaries and the actual invoices they purported to summarize. Morris could not offer any definitive explanation for those discrepancies, speculating that they could be attributable to credits or corrections for billing errors.

Third, plaintiff contended that defendant's total alleged counterclaim damages failed to account for payments that plaintiff had subsequently made to defendant on previously unpaid invoices. Ayriss testified that plaintiff had made payments of at least $104,000 on the outstanding invoices. According to Ayriss's calculations, as a result of payments and corrections for billing errors—and without any reduction for alleged overcharges[3]—as of the time of trial there remained only $170,000 "outstanding on the books."[4] It

---

[3] Neither party argued at trial, or on appeal, that any amount found due and owing on plaintiff's claim for overcharging should be set off against any recovery by defendant on its nonpayment counterclaim. As noted, however, plaintiff did contend that defendant's recovery on the nonpayment counterclaim should be *reduced* by the amount of improper overcharges on the invoices. *See* 201 Or App at 452.

[4] We note that a statement that an account remains "outstanding" does not ordinarily, or necessarily, connote an admission that the debtor is, in fact, liable for the full amount stated as "outstanding":

"In its general sense, 'outstanding accounts' means such accounts as are due, unpaid, uncollectible, as an ordinary outstanding draft or bond or other indebtedness, and is broad enough to include within its terms good and bad accounts which are due and unpaid."

*McCulsky v. Klosterman*, 20 Or 108, 112, 25 P 366 (1890); *see also Webster's Third New Int'l Dictionary* 1604 (unabridged ed 2002) (defining "outstanding" as "uncollected, unpaid" and as "continuing in being : unresolved"). Thus, the term "outstanding," as used in the phrase "accounts outstanding" and in its ordinary sense,

is not clear from her testimony whether Ayriss included interest in arriving at that figure.

The case was tried to the court over two days. The trial court subsequently issued a letter opinion that stated:

"Each [party] submits it should prevail *in toto* and that the other should take nothing. * * * [T]he ultimate decisions turn on whether either party satisfied its burden of proof.

"* * * Although I am convinced plaintiff was overcharged, I do not know by how much. Although I also am convinced defendant has been underpaid, I likewise do not know by how much. No evidence was presented to provide a basis of what to award either party other than the full amounts each has claimed. In this unusual if not unique circumstance, the parties must remain in their undisturbed positions.

"In sum, plaintiff did not sustain its burden of proving it was overcharged bills in the sum of $274,399. Likewise, defendant did not sustain its burden of proving it is owed $281,448.86 for bills and interest through April 30, 2003 flowing from charges it made to plaintiff from August 31, 2001 through March 31, 2002."

The court also determined that, because "neither side is the prevailing party," neither is entitled to attorney fees. The court explained:

"[W]hereas each has defended against an almost identical dollar claim, and in light of all other relevant factors in setting attorneys' fees, neither is awarded such fees, since reasonable fee awards would be identical."

Approximately one week after the court's initial letter opinion, defendant's attorney submitted a letter to the trial court asking the court to resolve "inherent inconsistencies" in its opinion. That letter identified two purported problems with the opinion. First, defendant asserted that the trial court's findings were logically inconsistent:

"You stated that you were convinced that each party was owed money by the other but that you did not know how

---

refers simply to the unpaid nature of the accounts, regardless of any justification for the lack of payment or whether there exists any valid defense to the debtor's obligation to pay the amount outstanding.

much. You stated that neither party sustained its burden of proving the amount of the total damages sought, but you also stated, 'No evidence was presented to provide a basis of what to award either party <u>other than the full amounts</u> each has claimed.' (Emphasis added.) Reading these statements together results in two logical inconsistencies. You state that you have found liability for each party but that neither party has sustained its burden of proof. You state that neither party proved the amount of its damages, other than to present evidence of the full amounts of damages claimed. * * * Unless you reconsider and clarify your decision, it seems to me that the inevitable result of an appeal would be a remand to resolve these inconsistencies."

Second, defendant objected to the trial court's failure to determine an amount of damages on the counterclaim:

"In addition, you have found that each party established liability to the other but you have not determined the amount of damages. I respectfully suggest that the responsibility of the finder of fact is to determine damages from the available evidence after liability has been established. From defendant's perspective, there is substantial evidence in the record to warrant judgment in favor of defendant's counterclaim. As you will recall, that counterclaim was based upon the amount of unpaid invoices, plus accrued interest pursuant to the contracts between the parties. Plaintiff admitted that the invoices were unpaid and plaintiff's counsel stipulated to the summaries of the invoices that were introduced into evidence. In short, defendant made a prima facie case for a judgment on its behalf. Having done so, the burden of proof shifts to plaintiff to prove that the amount owing should be less than defendant proved. If the Court is unable to ascertain whether and how much to deduct from the damages proved by defendant, then that evidentiary failure is entirely plaintiff's fault and defendant should be entitled to a judgment for the full amount of damages proven."

Defendant's letter concluded with an apology for "this informal method of suggesting resolution" and offered to submit "a more formal motion for reconsideration if you feel that would be more appropriate."

The trial court responded with a second letter opinion, in which, as relevant to this appeal, the court attempted to clarify its decision:

"In my first letter, I apparently failed to convey that while I was satisfied each party may have some liability to the other, without engaging in conjecture, guesswork, and/or speculation, I could not determine what those amounts would be based on the evidence that was presented. In other words, both parties failed to satisfy their burdens of proof.

"Thus, there is no liability of defendant to plaintiff, and there is no liability of plaintiff to defendant. Defendant did not make out a *prima facie* case for judgment on its behalf. Neither did plaintiff."

The court noted that motions for reconsideration "are not available or allowed," denied defendant's motion, and entered judgment. That judgment reiterated the statements from the court's first letter opinion to the effect that neither party had sustained its respective burden of proof and that, "[a]ccordingly[,] neither [party] is prevailing party and neither is awarded its costs and attorney fees."

Defendant appeals and raises three assignments of error.[5] The first and second of those assignments, which, to some extent, are predicated on overlapping arguments, challenge the trial court's denial of defendant's letter request for reconsideration and the merits of its ultimate disposition of the counterclaim. The third assignment challenges the trial court's denial of attorney fees under the "prevailing party" provision of the parties' contract.

As explained below, we reject defendant's first and second assignments of error but conclude that the trial court erred in its failure to designate prevailing parties on the various claims. Consequently, we reverse and remand for reconsideration of defendant's attorney fee petition.

Defendant's first assignment of error challenges the trial court's failure to award damages to defendant on the counterclaim "in light of [the court's] findings that plaintiff breached its contract with defendant and that defendant proved the full amount of damages that it claimed." The gravamen of that assignment, as we understand it, is that there

---

[5] Plaintiff has neither appealed nor cross-appealed, and does not cross-assign error to any of the trial court's rulings.

was an irreconcilable inconsistency between the court's "findings" and its judgment; that the former should control; and that, consequently, defendant was entitled to entry of judgment on the counterclaim in the full amount sought, $281,228.86. *See U. S. National Bank v. Fought*, 291 Or 201, 203 n 3, 630 P2d 337 (1981) (determining that the plaintiff had, by way of a "motion for reconsideration," preserved for appellate review the question of whether the trial court's findings of fact compelled entry of judgment in the plaintiff's favor).

That assignment of error rests on a false premise. Contrary to defendant's assumption, the trial court never rendered a finding that defendant had, in fact, *"proved* the full amount of damages" that it sought on the counterclaim. (Emphasis added.) Rather, the trial court's first letter opinion merely stated that each party had "presented" evidence as to the full amount of its alleged damages. *See* 201 Or App at 454 (quoting letter opinion). The trial court did not state that it found that evidence to be persuasive, let alone sufficient to support a verdict for the full amount of either the claim or the counterclaim. To the contrary, the trial court expressly determined that neither party had sustained its "burden of proving" the full amount of damages claimed. *Id.* Accordingly, there is no inconsistency between the court's "findings" as expressed in its letter opinion and its failure to award defendant the full amount of its alleged counterclaim damages.

Defendant's second assignment of error is that "the trial court erred in denying defendant's motion for reconsideration." Although the arguments that defendant urges in support of that assignment are somewhat diffuse, and to a certain extent overlap with the substance of the first assignment of error, we understand defendant to advance two alternative and distinct contentions with respect to the trial court's alleged error. First, given the evidence presented at trial, the court was obligated, as a matter of law, to enter judgment for defendant on the counterclaim in the full amount sought. Second, in all events, "[t]he trial court's conclusion that plaintiff was entitled to a 'defense verdict on [defendant's] counterclaim' is plainly wrong because there is

no record evidence to support the conclusion that plaintiff owes defendant *nothing.*" (Emphasis in original.)

■　　　Before addressing the substance of those contentions, we must consider the procedural propriety of defendant's "motion for reconsideration" and the reviewability of the trial court's denial of that "motion." *See State v. Wyatt,* 331 Or 335, 346, 15 P3d 22 (2000). We note, at the outset, that there is no provision in the Oregon Rules of Civil Procedure for a "motion for reconsideration"—and, indeed, defendant's request for reconsideration here was raised by letter, rather than by way of a formal motion. Nevertheless, we have held that, when a trial court issues a memorandum opinion that is predicated on a legally erroneous determination of damages, it is incumbent upon the party disadvantaged by that error to bring it to the trial court's attention before the entry of judgment. *See McDougal v. Griffith,* 156 Or App 83, 87-88, 964 P2d 1135 (1998), *rev den,* 328 Or 330 (1999) (where trial court's letter opinion, which appellant received a month before entry of judgment, indicated that court intended to award damages in excess of the prayer, in violation of ORCP 67 C(2), and appellant raised no objection before entry of judgment, error was not preserved). Failure to timely object results in nonpreservation of the alleged error. *Id.* Here, defendant's counsel's letter request to the trial court served precisely the function that underlay our discussion and disposition in *McDougal.*[6] *See also Voth v. State of Oregon,* 190 Or App 154, 157-58, 78 P3d 565 (2003), *rev den,* 336 Or 377 (2004) (addressing reviewability under ORAP 5.45 of assignment of error to denial of "motion for reconsideration" where that motion "was made before the court's final ruling was made by order or by judgment * * *").

That does not, however, conclude our consideration of preservation and reviewability. Although, as a general matter, denials of requests for "reconsideration" in this procedural posture are reviewable, one facet of defendant's

---

[6] In *McDougal,* we pointed, by way of analogy, to case law requiring a party to object to alleged inconsistencies in a jury's verdict before the jury is discharged. *See* 156 Or App at 87 (citing *Smith v. J. C. Penney Co.,* 269 Or 643, 652-53, 525 P2d 1299 (1974); *Torbeck v. Chamberlain,* 138 Or App 446, 453, 910 P2d 389, *rev den,* 323 Or 265 (1996); *Kilgore v. People's Savings & Loan Assn.,* 107 Or App 743, 753, 814 P2d 163 (1991), *rev dismissed,* 313 Or 300 (1992)).

second assignment of error was not preserved for our review. As noted, defendant advances two alternative contentions, the first of which asserts that denial of reconsideration was error because defendant was entitled, as a matter of law, to recover all damages sought on the counterclaim. That contention is unpreserved because defendant failed to raise such an argument in the trial court. *See Peiffer v. Hoyt*, 186 Or App 485, 491, 63 P3d 1273 (2003), *aff'd*, 339 Or 649, 125 P3d 734 (2005) ("Although petitioner urged the * * * court to find the facts in her favor, she never told the court that it was required to do so as a matter of law. The factual argument that petitioner made below failed to preserve the legal issue that she seeks to raise on review.").[7] We further note that, in all events, if defendant had raised such an argument, it would properly have been rejected, given that plaintiff had, in fact, presented evidence disputing defendant's entitlement to a full recovery. *See* 201 Or App at 451-53.

■   Conversely, *Peiffer* does not preclude review of the trial court's rejection of defendant's alternative contention, *viz.*, that, regardless of whether defendant was entitled to recover *everything* it sought, given the record evidence and the trial court's determination of liability on the counterclaim, the court's conclusion that it could not award *anything* on the counterclaim was legally erroneous. That contention is not that defendant was legally entitled to any particular award of damages; rather, it is that the court erred, as a matter of law, in determining that the indefiniteness of defendant's proof precluded *any* award of damages on the counterclaim. None of the precedents underlying *Peiffer*, 186 Or App at 490-91,[8] suggests that the latter contention must be raised by way of a motion for directed verdict or some other,

---

[7] In this case, defendant's counsel argued in closing argument to the trial court that defendant should prevail on its counterclaim. However, in full context, that argument was based on the relative persuasiveness of the parties' evidence. Counsel never argued that the court was *legally compelled* to enter judgment for defendant on the counterclaim in the full amount sought.

[8] *See, e.g., Falk v. Amsberry*, 290 Or 839, 626 P2d 362 (1981); *Bend Tarp and Liner, Inc. v. Bundy*, 154 Or App 372, 961 P2d 857, *rev den*, 327 Or 484 (1998); *Wilkes v. Zurlinden*, 146 Or App 371, 932 P2d 584, *vac'd on other grounds*, 325 Or 489, 940 P2d 518 (1997), *adh'd to on remand*, 152 Or App 130, 952 P2d 569 (1998), *rev'd in part on other grounds*, 328 Or 626, 984 P2d 261 (1999).

preverdict "matter of law" equivalent device, and we decline to so extend *Peiffer*.

With respect to the merits of that latter contention, we agree with plaintiff that the trial court did not err, as a matter of law, in concluding that defendant failed to satisfy its burden of proof with respect to damages on the counterclaim. In particular, notwithstanding defendant's adamant assertions that it adduced unrebutted proof of payment for goods and services supplied, defendant fails to acknowledge that plaintiff, in response, presented evidence raising substantial questions as to the accuracy of defendant's proof (including the summaries of invoices) as well as defendant's asserted contractual entitlement to recover the full amount of each invoice, *i.e.*, whether the invoiced prices included some component of impermissible overcharging. The trial court was entitled to credit those overarching challenges to defendant's proof—and, if it did so (as it explicitly did in finding that "plaintiff was overcharged"), the trial court could properly conclude that defendant's proof was so flawed as to preclude a reasoned award of damages.

■■ To recover any amount claimed as owing on its open account with plaintiff,[9] defendant was obligated to prove (1) a valid contract between the parties; (2) an amount outstanding on the account; and (3) the amount outstanding is correct under the contract or otherwise reasonable:

> "A common-law cause of action on an account requires proof that there was a sale and delivery of merchandise, that the prices were charged in accordance with an agreement or, in absence of an agreement, were usual, customary, and reasonable prices for merchandise, and that the account was not paid."

*Accounts & Accounting*, 1 Am Jur 2d 630 § 8 (2005); *see also U.S. Genes v. Vial*, 143 Or App 552, 556, 923 P2d 1322 (1996) (in action on account where defendant did not dispute the

---

[9] Defendant's counterclaim, although styled as one for breach of plaintiff's duty to pay under the contract, is, in substance, an "action on account." An action on account is a cause of action by which the parties seek adjudication of the amount owing and an enforceable judgment for that amount. *See Accounts & Accounting*, 1 Am Jur 2d 628-646 §§ 8-25 (2005) (discussing elements and proof required to establish "action on account").

amount charged for goods and "admitted that he had purchased * * * and had not paid for them," directed verdict for plaintiff was appropriate because "there were no factual issues to decide and plaintiff was entitled to prevail on the claim as a matter of law").

In sum, defendant was obligated to prove not only the accuracy of its proof of nonpayment, including the summaries of invoices, but also that the invoiced prices were in accordance with the parties' contract. Defendant attempted to satisfy that burden by presenting testimony from Morris, defendant's executive director for Oregon, stating that the invoices were accurate and remained unpaid. In response, as noted, plaintiff presented evidence directly challenging both the accuracy of the amount charged and the conformity of that amount to what should have been charged under the contract. *See* 201 Or App at 452-53.

■ In particular, plaintiff presented evidence of accounting errors, payments on invoices, and other pervasive "slippage" in defendant's proof, especially the summaries of invoices. Given that evidence, the trial court was entitled to conclude that defendant's proof of damages was so flawed, as a matter of fundamental accuracy, that, although "defendant has been underpaid," the court could not, in principled fashion, determine the amount of defendant's damages. *See North Pacific Lbr. v. Moore*, 275 Or 359, 366, 551 P2d 431 (1976) (party seeking monetary damages must "establish the fact of damage and evidence from which a satisfactory conclusion as to the amount of damage can be reached"). Alternatively, given the trial court's express determination that defendant had, in fact, overcharged plaintiff, the court could properly conclude that defendant had failed in its burden of proving that the invoiced prices did, in fact, comport with the parties' contract. Accordingly, the trial court did not err in concluding that, because defendant had not met its burden of proof, it was not entitled to recover on its counterclaim.

We turn, finally, to defendant's third assignment of error, which challenges the trial court's denial of prevailing party attorney fees under the parties' contract. On appeal, defendant contends that the trial court erred in failing to award attorney fees to defendant as the prevailing party on

both plaintiff's claim for breach of contract and on its own counterclaim. For the reasons stated above, defendant's alleged fee entitlement on the counterclaim fails. However, for the reasons that follow, we remand for the trial court to reconsider defendant's entitlement to attorney fees as the prevailing party on plaintiff's breach of contract claim.

■　The parties' contract provides:

> "In the event [defendant] incurs costs to enforce any of the terms or conditions in this Agreement and/or to collect an unpaid account balance, [defendant] shall be entitled to reimbursement by [plaintiff] of any and all costs of said collection.
>
> "In the event of litigation by [plaintiff] for the enforcement of this Agreement, or any of the provisions thereof, the prevailing party shall be reimbursed by the losing party for attorney's fees and costs which may be awarded. If an appeal is taken, the prevailing party shall be reimbursed for its fees incurred."

The contract does not define "prevailing party." Because this action was commenced in April 2002, after the effective date of ORS 20.077 (2001),[10] that statute governs the determination of "prevailing party" status:

> "(1)　In any action or suit in which one or more claims are asserted for which an award of attorney fees is either authorized or required, the prevailing party on each claim shall be determined as provided in this section. The provisions of this section apply to all proceedings in the action or suit, including arbitration, trial and appeal.
>
> "(2)　For the purposes of making an award of attorney fees on a claim, the prevailing party is the party who receives a favorable final judgment, decree or arbitration award on the claim. If more than one claim is made in an action or suit for which an award of attorney fees is either authorized or required, the court or arbitrator shall:
>
> "(a)　Identify each party that prevails on a claim for which attorney fees could be awarded;

---

[10] *See* Or Laws 2001, ch 417, § 1.

"(b)   Decide whether to award attorney fees on claims for which the court or arbitrator is authorized to award attorney fees, and the amount of the award;

"(c)   Decide the amount of the award of attorney fees on claims for which the court or arbitrator is required to award attorney fees; and

"(d)   Enter a judgment that complies with the requirements of ORCP 70A."

Here, because plaintiff failed to "make out a *prima facie* case for judgment on its behalf" on the breach of contract claim, defendant prevailed on that claim. That is, defendant "receive[d] a favorable final judgment * * * on the claim." ORS 20.077(2). Further, under the terms of the parties' contract, plaintiff's claim was a claim "for which attorney fees could be awarded." ORS 20.077(2)(a). Accordingly, the trial court erred in concluding that defendant was not a "prevailing party" on plaintiff's claim and, consequently, in denying defendant's petition for attorney fees on that basis.

Denial of defendant's request for attorney fees reversed and remanded; otherwise affirmed.