## In the Matter of the Marriage of

### John M. PROCTOR,
*Respondent,*

*and*

### Joyce A. SMITH PROCTOR,
*Appellant.*

### Joyce A. SMITH PROCTOR,
*Appellant,*

*v.*

### John KENDALL MAVIS,
*Respondent,*

*and*

### Chris POPOV,
Sandra Meyers,
and William Martell Meyers,
*Third-Party Respondents below.*

15-02-23725; A123045

125 P3d 801

Mark Johnson argued the cause for appellant. With him on the briefs was Johnson Renshaw & Lechman-Su PC.

Ridgway K. Foley, Jr., argued the cause for respondent John M. Proctor. With him on the brief was Greene & Markley, P.C.

Russell Lipetzky argued the cause and filed the brief for respondent John Kendall Mavis.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum,* Judges.

_____

* Rosenblum, J., *vice* Richardson, S. J.

ARMSTRONG, J.

## ARMSTRONG, J.

Wife appeals from a judgment of dissolution, assigning error to the trial court's division of property, specifically its award of certain marital assets to husband; its allowance of a "reimbursement" to husband under California law for contributions made to the acquisition of marital assets; its failure to award attorney fees to wife; and its award of attorney fees to respondent Mavis. We conclude that the trial court erred with respect to the property division and otherwise affirm.

The parties were married in California in 1991. They came into the marriage with separate assets, and had a premarital agreement describing the treatment of those assets.[1]

---

[1] The agreement's recitals provided:

"A.  John and Joyce intend to be married prior to June 30, 1991.

"B.  John is presently the owner of certain real property as set forth on Schedule 'A' attached hereto, and Joyce is presently the owner of certain property as set forth on Schedule 'B' attached hereto.

"C.  John and Joyce desire to define, by this Agreement, their respective rights in the property of the other, and to avoid such interests which, except for the operation of this Agreement, they might acquire in the property of the other as incidents of their marriage relationship.

"D.  John and Joyce desire, by this Agreement, to define their respective property rights following their contemplated marriage. They intend, with regard to the property listed on their respective schedules, to retain all rights to manage, dispose of, hold, own or acquire new property to the same extent as if he or she had remained single."

Article I, Property Interests, provided:

"1.  The recitals above are incorporated by this reference as a part of the Agreement between the parties.

"2.  The property set forth on Schedule 'A' attached hereto is the separate property of John and such property shall remain his separate property.

"3.  The property set forth on Schedule 'B' attached hereto is the separate property of Joyce and such property shall remain her separate property.

"4.  Each party agrees that any community efforts of either party contributed to or directed toward separate property assets of either spouse shall not create a community interest in the separate property assets.

"5.  Each party agrees that any sales of separate property of either spouse and the proceeds of any such sales remain entirely separate property even though uncompensated community property efforts have been contributed to the separate property.

"6.  Each party shall retain the management and control of his or her separate property, whether real or personal, and each party may encumber, sell or dispose of his or her separate property without the consent of the other.

The premarital agreement included a "choice-of-laws" provision: "This agreement is made and entered into between the parties in California and shall be interpreted as construed in accordance with the laws of the State of California."

The trial court entered a dissolution judgment in November 2003. It divided the marital property as proposed by husband. The trial court explained that the award of property to husband included "reimbursement" to husband for his contributions to the acquisition of marital assets, in the amount of $453,845.63. Reimbursements are a component of property divisions under California dissolution law. California Family Code section 2640(b) provides, in part:

> "In the division of the community estate under this division, unless a party has made a written waiver of the right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contributions to the acquisition of the property to the extent the party traces the contributions to a separate property source."

The trial court apparently concluded that the parties' premarital agreement, specifically, the choice-of-laws provision, required that the parties' marital assets be divided pursuant to California law.

In her first assignment of error, wife asserts that the trial court erred in treating the premarital agreement's choice-of-laws provision as requiring application of California substantive law to the division of property.[2] Rather, she contends, the provision merely governs the construction of the agreement, and Oregon law applies to the

---

"7. Any existing or future business owned or acquired by either party as their separate property, as well as any increase in value to that business, whether in the form of a sole proprietorship, corporation, association, partnership or any other form of entity, together with any assets related to that business, shall remain the separate property of the party owning or acquiring the same."

(Underscoring in original.)

[2] We reject husband's contention that the argument raised in the first assignment of error was not preserved. We understand wife's first assignment of error to be encompassed within the argument made to the trial court that Oregon, and not California, law should apply to the division of marital assets.

division of property. We agree. Under the Uniform Premarital Agreement Act (UPAA), ORS 108.700 to 108.740, which has also been enacted in California, Cal Fam Code §§ 1601 to 1612, the parties to a premarital agreement may contract with respect to, among other terms, "the choice of law governing the construction of the agreement." ORS 108.710(1)(g);[3] Cal Fam Code § 1612(a)(6). The choice-of-laws provision in the parties' premarital agreement is just that: an agreement that California law will govern the *construction* of the agreement. The provision does not relate to the law applicable to the division of property on dissolution. Furthermore, there is no other provision in the premarital agreement that can be understood to require the application of California law to the division of property. Accordingly, we conclude that, in this Oregon dissolution case, Oregon law applies to the division of property and the trial court erred in applying California law, including California Family Code section 2640(b). *See Day and Day*, 137 Or App 264, 269, 904 P2d 171 (1995), *rev den*, 322 Or 598 (1996).

■ In her second assignment, wife contends that the trial court erred in awarding to husband, as his own separate property, five specific assets that she asserts are marital assets: (1) $100,000 received by husband as repayment of a "loan" made to third-party respondent Popov, which are the proceeds of Popov's sale of Lot 15, adjacent to the parties'

---

[3] ORS 108.710 provides, in part:

"(1) Parties to a premarital agreement may contract with respect to:

"(a) The rights and obligations of each of the parties in any of the property of either or both of them whenever and wherever acquired or located;

"(b) The right to buy, sell, use, transfer, exchange, abandon, lease, consume, expend, assign, create a security interest in, mortgage, encumber, dispose of or otherwise manage and control property;

"(c) The disposition of property upon separation, marital dissolution, death or the occurrence or nonoccurrence of any other event;

"(d) The modification or elimination of spousal support;

"(e) The making of a will, trust or other arrangement to carry out the provisions of the agreement;

"(f) The ownership rights in and disposition of the death benefit from a life insurance policy;

"(g) The choice of law governing the construction of the agreement; and

"(h) Any other matter, including their personal rights and obligations, not in violation of public policy or a statute imposing a criminal penalty."

marital residence, to third-party respondent Mavis; (2) a Starduster Bi-Plane; (3) a 1994 Cadillac; (4) the proceeds of the sale of a 2000 Ford truck; and (5) a contract receivable interest on property at Kimmel Lane. It is undisputed that the assets were acquired during the marriage. Accordingly, there is a presumption that the parties contributed equally to their acquisition. ORS 107.105(1)(f); *Kunze and Kunze*, 337 Or 122, 133, 92 P3d 100 (2004). The presumption can be overcome by evidence that the other spouse's efforts during the marriage did not contribute equally to the acquisition of the disputed marital asset. *Id.*

In *Kunze*, the Supreme Court said that, in assessing whether a party has satisfied its burden to overcome the presumption of equal contribution, ORS 107.105(1)(f) requires the court to consider both economic and noneconomic spousal contributions. If a party ultimately rebuts the presumption that the other spouse contributed equally to a disputed marital asset, then the court decides how to distribute that marital asset without regard to any presumption and, instead, considers only what is "just and proper in all the circumstances," including the proven contributions of the parties to the asset. *Id.* at 135. However, when a party has proved that a marital asset was acquired free of any contributions from the other spouse, absent other considerations, it is "just and proper" to award that marital asset separately to the party who has overcome the statutory presumption. *Id.*

The trial court did not specifically identify which properties it considered to be marital assets, which properties it awarded to husband as his own separate assets, and which properties it considered to be part of the reimbursement to husband for his contribution to the acquisition of marital assets. The trial court did adopt the facts and analysis set forth in husband's trial memorandum, as well as husband's suggested division of property. It is not possible to tell from that document, however, whether the five specific assets at issue on appeal were considered by the trial court to be the separate property of husband or were awarded to husband as reimbursement for his contribution to the acquisition of marital assets. We have reviewed the record *de novo*, and have engaged in the tracing of assets necessitated by the parties' divergent contentions. It would not be helpful to the

bench, bar, or public to set forth the details of our analysis with respect to each asset. Suffice it to say that husband has not overcome the presumption of equal contribution with respect to each of the assets by showing that the assets were acquired free of any contribution from wife. Accordingly, on remand, the trial court should treat the five assets as assets to which the parties contributed equally to their acquisition.

■ In her second amended response and third-party petition, wife requested attorney fees. In a letter opinion, the trial court said that "[n]either party is awarded attorney fees or cost against the other." In her third assignment of error, wife contends that the trial court erred in denying her request for attorney fees. Specifically, she argues that the trial court should not have denied the request for attorney fees without following the procedures set forth in ORCP 68.

Husband argues that wife did not preserve any objection to the failure to follow the procedures of ORCP 68, because she did not raise that question in the trial court. We agree. Under ORCP 68, if a party wishes to make a claim for attorney fees pursuant to ORCP 68 C(4)(a), the party may file a statement, ORCP 68 C(4)(a)(I), and is entitled to the court's consideration of the request. *O'Neal and O'Neal*, 158 Or App 431, 974 P2d 785 (1999). A party objecting to the statement must be allowed 14 days to file an objection. ORCP 68 C(4)(b). *Young and Young*, 172 Or App 108, 111, 17 P3d 577 (2001). The failure of the trial court to follow those procedures is error. *Id.* However, any claim of error must be preserved to be considered on appeal. *See Weatherspoon v. Allstate Ins. Co.*, 193 Or App 320, 337, 89 P3d 1277, *rev den*, 337 Or 327 (2004); *see also Northwest Country Place v. NCS Healthcare of Oregon*, 201 Or App 448, 459, 119 P3d 272 (2005); *McDougal v. Griffith*, 156 Or App 83, 87, 964 P2d 1135 (1998), *rev den*, 328 Or 330 (1999).

We reject wife's contention that, because the trial court had previously ruled in its letter opinion that each party would bear its own costs, the filing of a statement requesting fees under ORCP 68 would have been futile. Despite the trial court's letter opinion, there were at least two ways in which wife could have brought to the trial court's attention the requirements of ORCP 68 C(4) if she wished to

pursue her request for attorney fees: She could have objected to the trial court's ruling in its letter opinion, or she could have filed a statement requesting fees under ORCP 68 C(4)(a). We conclude that wife failed to preserve error by bringing to the court's attention her desire to follow the procedures set forth in ORCP 68 C.

Wife contends that we should nonetheless exercise our discretion to review the assignment as plain error. ORAP 5.45(1). We decline to do so, in part because we are not convinced that the trial court's failure to follow the procedures under ORCP 68 C was plain error in the absence of a statement from wife requesting fees under ORCP 68 C(4)(a)(I).

■ Wife's fourth assignment of error is directed at the trial court's award of attorney fees to third-party respondent Mavis in a supplemental judgment entered February 6, 2004. Mavis is the owner of Lot 15, which is adjacent to the marital residence. He purchased the property for $100,000 from third-party respondent below, Popov, who originally acquired the property in 2001 with money from the parties' joint account, as a part of an intended Internal Revenue Code section 1031 tax-free exchange. The exchange fell through; thus, Popov retained the deed to the property, which the parties used as an extension of their residence. After the filing of the dissolution petition, husband was in need of funds and sought to have Popov pay $100,000 for Lot 15. He could not do so, and instead, the property was sold to Mavis, and the proceeds of the sale were paid to husband.

Wife believed that she held an equitable interest in Lot 15, and that husband had disposed of it without her permission after the filing of the dissolution petition. She joined Popov and Mavis in the dissolution proceeding as third-party respondents and sought to have the sale of Lot 15 to Mavis set aside. The trial court declared that Mavis is the owner of Lot 15, and, in a supplement judgment entered February 6, 2004, the trial court awarded Mavis attorney fees pursuant to ORS 107.105(1)(j) and ORS 20.075.[4] Wife filed an amended notice of appeal from the supplemental judgment.

---

[4] ORS 20.075 provides:

"(1) A court shall consider the following factors in determining whether to award attorney fees in any case in which an award of attorney fees is

Mavis moves to dismiss wife's amended notice of appeal as jurisdictionally defective, because it fails to designate Mavis as a party to the appeal. Wife attached to the

authorized by statute and in which the court has discretion to decide whether to award attorney fees:

"(a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

"(b) The objective reasonableness of the claims and defenses asserted by the parties.

"(c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

"(d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

"(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

"(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

"(g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.

"(h) Such other factors as the court may consider appropriate under the circumstances of the case.

"(2) A court shall consider the factors specified in subsection (1) of this section in determining the amount of an award of attorney fees in any case in which an award of attorney fees is authorized or required by statute. In addition, the court shall consider the following factors in determining the amount of an award of attorney fees in those cases:

"(a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

"(b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

"(c) The fee customarily charged in the locality for similar legal services.

"(d) The amount involved in the controversy and the results obtained.

"(e) The time limitations imposed by the client or the circumstances of the case.

"(f) The nature and length of the attorney's professional relationship with the client.

"(g) The experience, reputation and ability of the attorney performing the services.

"(h) Whether the fee of the attorney is fixed or contingent.

"(3) In any appeal from the award or denial of an attorney fee subject to this section, the court reviewing the award may not modify the decision of the court in making or denying an award, or the decision of the court as to the amount of the award, except upon a finding of an abuse of discretion."

amended notice of appeal a copy of the supplemental judgment awarding fees to Mavis, and served Mavis. The allegations of the amended notice of appeal expressly designated only husband and wife as parties to the appeal. Mavis had been designated as a party in the original notice of appeal, however, and was also listed as a respondent on the caption of both notices of appeal.

We conclude that, although the amended notice of appeal is technically defective because it does not separately assert that Mavis is an adverse party to the appeal as required by ORS 19.250(1)(c), that defect is not jurisdictional, because Mavis received notice adequate to apprise him that an appeal was being taken from the supplemental judgment awarding him attorney fees. *See Jeffries v. Mills,* 165 Or App 103, 112, 995 P2d 1180 (2000). We accordingly deny Mavis's motion to dismiss.

On the merits, we conclude that wife's objection to the award of attorney fees is not well taken. In its supplemental judgment awarding fees, the trial court stated:

"d.   Said fees and costs are reasonable in light of the following factors described in ORCP 68 and ORS 20.075(2): (1) the novelty and difficulty of the questions involved in the third party proceeding; (2) the skills required to perform the legal service properly; (3) the likelihood, which was apparent to the client, that the acceptance of the particular employment would preclude other employment by the lawyer, including that Third Party Respondent Mavis was, according to the records and files herein, served only two months before trial, and after the other parties had already set a trial date, necessitating preparation in a relatively short time frame, which also precluded other work; (4) the fees customarily charged in the locality for similar legal services (the hourly rates charged are reasonable given counsel's skill and experience and the rates commonly charged in the locale for the same); (5) the amount involved and the results obtained (the property involved was valued at approximately $100,000, its purchase price approximately one year ago, and the fees incurred were reasonable in light of that value and the results obtained); (6) the time limitations imposed by the circumstances, as described above; and (7) the experience, reputation and ability of the lawyer performing the services, who has practiced since

1976, and the fees charged are commensurate with her experience, reputation and ability;

"e.   An award and costs is proper under ORS 20.075(1) in consideration of the factors described in findings a. through e. above; because Third Party Petitioner's claim against Third Party Respondent Mavis was not objectively reasonable; and because an award of an attorney fee in the case would deter others from asserting meritless claims against third parties in dissolution of marriage proceedings."

Wife does not challenge the amount of the fees awarded or any of the court's findings on the factors described in ORS 20.075(2). Rather, she contends that the trial court erred as a matter of law in considering factors described in ORS 20.075(1), because none of them was identified in Mavis's statement of attorney fees, and wife therefore had no opportunity to address them below and should not be placed in the position of contesting them on appeal. We reject that view of how ORS 20.075 is intended to work.

When awarding discretionary attorney fees, the trial court must consider the statutory factors set forth in ORS 20.075(1). *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 185, 187, 957 P2d 1200 (1998). Here, it is apparent that the trial court considered the objective reasonableness of wife's claim against Mavis as a justification for the award of fees. Contrary to wife's suggestion, there is no requirement in the statute that the trial court consider only factors that have been identified by the party requesting fees.

As to the substance of the trial court's determination, wife contends that the court erred as a matter of law in deciding, based on ORS 20.075(1)(b), that there should be an award of attorney fees to Mavis, because wife's claim against Mavis was not "objectively unreasonable." We note that the court in fact expressly relied also on ORS 20.075(1)(d), deterrence of meritless claims and defenses, as a justification for the award. The record supports the trial court's stated justifications, and we conclude, accordingly, that the trial court did not abuse its discretion in awarding fees to Mavis. ORS 107.105(1)(j); ORS 20.075(3).

In summary, the trial court erred in applying California law to the division of marital property and ordering that husband be reimbursed for his contributions to marital assets. On remand, the trial court should reconsider the property division under Oregon law, and, in determining the just and proper division of assets, it should treat the five specific disputed assets as assets to which the parties contributed equally to their acquisition. The trial court's rulings on attorney fees are affirmed.

Reversed and remanded for reconsideration of property division; otherwise affirmed.