Argued and submitted May 28, 2009, reversed and remanded with instructions to enter judgment in favor of plaintiffs in the amount of $63,113.05 on claim for breach of contract; otherwise affirmed July 7, 2010

Jon Churchill CALHOUN
and Callie Deen Calhoun,
dba Caldeen Construction,
*Plaintiffs-Appellants,*

*v.*

Rusty L. BENNETT,
Liana L. Bennett, and
SunTrust Mortgage, Inc.,
a foreign business corporation,
*Defendants-Respondents.*

Union County Circuit Court
060443660; A136708

236 P3d 745

Damien R. Yervasi argued the cause for appellants. On the briefs were Milo Pope and Yervasi Pope, P.C.

Sean C. Gay argued the cause for respondent SunTrust Mortgage, Inc. With him on the brief were James N. Westwood and Stoel Rives LLP.

No appearance for respondents Rusty L. Bennett and Liana L. Bennett.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

■        Plaintiffs, who are licensed construction contractors, appeal a judgment denying their claim for foreclosure of a construction lien and awarding them damages for breach of contract or *quantum meruit* in the amount of $40,000.[1] They assert two assignments of error. First, they argue that the trial court erred in concluding that their construction lien was invalid because they had failed to deliver the "Information Notice to Owner" as required under ORS 87.093.[2] Second, they challenge the amount of damages awarded by the trial court on their breach of contract claim, contending that the trial court improperly reduced the amount of damages on that claim. We reject plaintiffs' first assignment of error without discussion. With respect to plaintiffs' second assignment of error, we reverse the award of damages and remand with instructions for the trial court to enter an award of damages in the amount of $63,113.05 in favor of plaintiffs on their breach of contract claim. Otherwise, we affirm.

---

[1] As discussed more fully below, the judgment purported to award plaintiffs damages under *either* of two alternate theories pleaded by plaintiffs—breach of contract or *quantum meruit*—based on the same operative facts. However, a party cannot recover in *quantum meruit* for matters covered by a valid contract. *Ken Hood Construction v. Pacific Coast Construction*, 203 Or App 768, 772, 126 P3d 1254, *rev den*, 341 Or 366 (2006) ("When pleaded in the alternative, [the theories of breach of contract and *quantum meruit*] are mutually exclusive: It is well established that there cannot be a valid, legally enforceable contract and an implied contract covering the same conduct." (Internal quotation marks omitted.)). In this case, there was no dispute as to the existence of a valid, legally enforceable contract; moreover, the court explicitly found that plaintiffs did not breach the contract and defendants did. Thus, there is no basis for the court's award of damages under a *quantum meruit* theory, and the parties do not argue otherwise on appeal. We therefore consider the propriety of the court's award of damages under plaintiffs' claim for breach of contract and do not address *quantum meruit* further.

The judgment also awarded plaintiffs damages for defamation. That part of the judgment is not at issue on appeal; nor is a supplemental judgment denying defendants attorney fees.

[2] That statute provides, *inter alia*, that an "Information Notice to Owner," describing the pertinent provisions of the Construction Lien Law and the respective rights and responsibilities of an owner of property and an original contractor under that law, must be delivered by the contractor to the owner at the time of the signing of the construction contract. ORS 87.093(2), (3). If the contractor fails to comply with that requirement, the contractor is prohibited from claiming a construction lien on the property for labor, services, or materials supplied under the contract. ORS 87.093(6).

We relate only the facts necessary to provide context for our discussion of plaintiffs' second assignment of error; those facts are undisputed. In May 2005, defendants Rusty and Liana Bennett (the Bennetts)[3] contracted with plaintiffs for construction of a house and other improvements on the Bennetts' property in Cove, Oregon. The contract price was $251,000. To finance the construction, the Bennetts entered into a construction loan agreement with defendant SunTrust Mortgage, Inc. (SunTrust or defendant); the loan was secured by a deed of trust recorded on August 8, 2005. The loan agreement provided that SunTrust would advance money for construction as work was completed and accepted by the Bennetts (also referred to as "draws").

Construction on the property proceeded and, in September 2005, the Bennetts received a draw of $27,610.99 from SunTrust, which they paid to plaintiffs. A second draw of $65,262.34 was advanced by SunTrust to the Bennetts on December 5, 2005; that money was not paid to plaintiffs. Instead, a dispute arose between plaintiffs and the Bennetts, and, on December 9, 2005, the Bennetts notified plaintiffs that they were terminating the contract. A subsequent letter from the Bennetts' lawyer to plaintiffs indicated that the Bennetts were terminating the contract due to "substantial nonperformance." On December 22, 2005, plaintiffs recorded a construction lien claim against the Bennetts' property in the amount of $73,996, plus interest from that date. They subsequently filed this action.

In an amended complaint, plaintiffs alleged seven claims for relief. It is the first two of those claims that are pertinent to this appeal. The first claim for relief was untitled and alleged three separate "counts." Count one alleged construction lien foreclosure; in the alternative, and as to the Bennetts only, plaintiffs alleged breach of contract (count two) and *quantum meruit* (count three). On each of those "counts," plaintiffs sought damages in the amount of $63,113.05, based on the unpaid balance of the materials, labor, and services provided by plaintiffs under the contract

---

[3] The Bennetts do not appear on appeal. Therefore, references in the remainder of this opinion to "defendant" refer only to defendant SunTrust Mortgage, Inc.

through December 9, 2005, together with costs and attorney fees.[4]

Plaintiffs' second claim for relief was labeled "Breach of Contract" and alleged that the Bennetts had breached the construction contract by unilaterally terminating it and that plaintiffs were thus entitled to "lost profits" from the Bennetts in the amount of $40,000.[5]

In response, the Bennetts and SunTrust each asserted a variety of affirmative defenses. The Bennetts also counterclaimed for breach of contract against plaintiffs, alleging that plaintiffs had materially breached the contract "by not completing the work in a timely fashion and in a workman like manner pursuant to the terms of the Contract," and for intentional interference with economic relations. SunTrust asserted a counterclaim for a declaratory judgment that plaintiffs' lien claim is invalid or, in the alternative, that SunTrust's deed of trust has priority over that claim.

The case was tried to the court. On May 4, 2007, the court issued an opinion, ruling in favor of the Bennetts and SunTrust on the construction lien claim and awarding plaintiffs $40,000 in damages against the Bennetts under either a breach of contract or *quantum meruit* theory.

As to determination of damages, the trial court understood plaintiffs to have alleged that the Bennetts had breached the contract by (1) "failing and refusing to pay Plaintiffs the balance due them under the construction agreement" ("count two" of plaintiffs first claim for relief); and (2) by "wrongfully terminating the contract, precluding Plaintiffs from completing the agreement causing Plaintiffs

---

[4] In the "prayer for judgment" portion of the amended complaint, plaintiffs sought damages in the amount of $73,996 as to each of those counts; however, the complaint also noted that $10,882.95 of that amount had been paid. In a motion filed after the court issued its opinion, plaintiffs represented that they had sought damages of $63,113.05 ($73,996 less $10,882.95). Thus, for sake of simplicity, we refer to $63,113.05 as the amount pleaded. As to count one, plaintiff also requested declaratory and other relief.

[5] We pause to note that a well-pleaded complaint may have avoided some of the confusion evident in the record of this case. For example, "count two" of plaintiffs' first claim for relief and plaintiffs' second "claim for relief" essentially alleged one claim for breach of contract, with two measures of damages.

$40,000 in lost profits" (plaintiffs second claim for relief). The court explicitly found that defendants had breached the contract and that plaintiffs had not breached the contract; thus, there was no basis for "reducing Plaintiffs' damages by the amount of the alleged construction defects." Ultimately, however, the court awarded plaintiffs $40,000, reasoning that, although plaintiffs claimed compensatory damages of $63,113.05, the amount awarded could not exceed the amount that plaintiffs had pleaded in lost profits under their second claim for relief.

After the court had issued its opinion, but before it entered judgment, plaintiffs challenged the court's calculation of damages. Specifically, plaintiffs argued that the court had incorrectly "limit[ed] the plaintiffs' recovery on their first claim for relief [counts two and three] because of lost profit damages pleaded in the plaintiffs' second claim for relief." The court rejected that argument and entered a general judgment consistent with, and incorporating, the court's earlier opinion. This appeal followed.[6]

On appeal, plaintiffs reassert their argument that the court erred in awarding them $40,000 in damages rather than $63,113.05 on their first claim for relief. Defendant responds, first, that the claim of error is not preserved for our review. On the merits, defendant contends that the trial court's award of $40,000 in compensatory damages to plaintiff is supported by evidence in the record and, thus, must be affirmed. *See, e.g., Eden Gate, Inc. v. D&L Excavating & Trucking, Inc.*, 178 Or App 610, 619, 37 P3d 233 (2002).

As an initial matter, we disagree with defendant that plaintiffs' claim of error was not adequately preserved. "[W]e have held that, when a trial court issues a memorandum opinion that is predicated on a legally erroneous determination of damages, it is incumbent upon the party disadvantaged by that error to bring it to the trial court's attention before the entry of judgment." *Northwest Country Place v. NCS Healthcare of Oregon*, 201 Or App 448, 458, 119 P3d 272

---

[6] After the case was briefed and argued on appeal, it was held in abeyance for a period while the parties sought to settle it.

(2005). In this case, plaintiffs did precisely that. *See also Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008) ("Preservation gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal.").

Defendants' contrary contention—that, in order to preserve their argument "that the evidence does not support the $40,000 damage award" plaintiffs were required to bring a motion under ORCP 64 B(5)[7] at the close of evidence at trial—both misapprehends plaintiffs' argument and is illogical. As to the former, plaintiffs do not challenge the sufficiency of the evidence supporting the damages award; rather, the basis for plaintiffs' assignment of error is that the trial court erred as a matter of law in determining the amount of damages. As to the latter, at the "close of evidence at trial," the court had not yet made its determination as to the various claims against the parties, much less the amount of damages to be awarded. Plaintiffs first became aware of the asserted error when the court issued its opinion. And, at that point, plaintiffs brought the error to the court's attention, giving the court the opportunity to correct it before judgment was entered. *Cf. McDougal v. Griffith*, 156 Or App 83, 87-88, 964 P2d 1135 (1998), *rev den*, 328 Or 330 (1999) (error that damages awarded exceeded amount pleaded not preserved where, before entering judgment, the trial court provided the parties with a memorandum opinion setting forth the various amounts of damages to be awarded and the plaintiff allowed judgment to be entered without objection). We conclude that the error is preserved for our review.

■ On the merits, defendant argues that, "[b]ecause the Bennetts and [plaintiffs] presented evidence that [plaintiffs'] damages varied from $8,570.60 to $103,114, the trial judge's award of $40,000 was supported by that evidence and should be affirmed." Defendant's statement of our standard of review is correct as far as it goes. *See Eden Gate, Inc.*, 178 Or

---

[7] ORCP 64 B(5) provides grounds for granting a new trial based on "[i]nsufficiency of the evidence to justify the verdict or other decision, or that it is against law."

App at 619 ("We will affirm a trial court's decision on compensatory damages if any evidence supports it."). However, it fails to recognize the nature of the error at issue. *See Babler Bros. v. Pac. Intermountain*, 244 Or 459, 467, 415 P2d 735 (1966) ("Where an error of law is shown to have influenced the court trying a case without a jury, reversal is * * * necessary.").

Here, plaintiffs alleged $63,113.05 in compensatory damages on their breach of contract claim and presented competent evidence in support of that amount.[8] The Bennetts presented evidence that plaintiffs' damages should be reduced to $8,470.64 due to cost of repairs as a result of plaintiffs' poor workmanship. However, the trial court explicitly found that plaintiffs had fully performed the contract without any defective work—in other words, the court found no basis on which to reduce the amount of compensatory damages owing plaintiffs for the work performed on the contract. There is an irreconcilable inconsistency between that finding and the court's ultimate determination that plaintiffs were entitled to only $40,000 in compensatory damages on their claim for breach of contract. Moreover, it is manifest from the court's opinion that its determination was based on an erroneous legal assumption—namely, that plaintiffs' entitlement to compensatory damages was limited by the amount plaintiffs pleaded as lost profits. Accordingly, we reverse and remand.

Reversed and remanded with instructions to enter judgment in favor of plaintiffs in the amount of $63,113.05 on claim for breach of contract; otherwise affirmed.

---

[8] Defendant's reference to the sum of $103,114 in the preceding paragraph includes the compensatory damages *and* the amount that plaintiff alleged as a lost profit measure of damages. On appeal, plaintiffs do not argue that they are entitled to lost profit damages in addition to compensatory damages; therefore, we do not address that issue.